IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

F. ALLAN MIDYETT, M.D.                                              PLAINTIFF

V.                          CASE NO. 5:19-CV-5152

ROBERT L. WILKIE,
Secretary, Department of Veterans Affairs                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Robert L. Wilkie's Motion to Dismiss (Doc. 10) and Plaintiff F. Allan Midyett, M.D.'s Response in Opposition. (Doc. 13). For the reasons given below, the Motion is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE** pursuant to the doctrine of res judicata.

## I.  BACKGROUND

On November 21, 2010, Plaintiff F. Allan Midyett began working as a radiologist at the Veteran's Healthcare Systems of the Ozarks ("VHS"), which is a hospital system operated by the U.S. Department of Veterans Affairs. VHS terminated Midyett's employment on March 19, 2012. Two days after the termination, he filed an Equal Employment Opportunity ("EEO") complaint before the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO"), "alleging that [VHS] discriminated against, and harassed him, on the bases of his race (Cherokee), national origin (Native American), sex (male), disability (hypertension and congestive heart failure), age (seventy-one), and in reprisal for prior protected EEO activity arising under Title VII." (Doc. 1-1, p. 150). On October 23, 2012, Midyett filed a second EEO complaint "alleging discrimination based on reprisal for prior EEO activity." *Id.* at 151. The two EEO complaints collectively asserted that VHS had discriminated against and harassed

1

Midyett due to his race, national origin, sex, disability, and age, all in violation of Title VII of the Civil Rights Act, the Rehabilitation Act, and the Age Discrimination in Employment Act ("ADEA"). He also claimed that VHS retaliated against him when he reported these incidents of discrimination and harassment.

While the EEO complaints were pending, Midyett filed four separate lawsuits in state court, one after the other. All lawsuits were eventually removed to this Court. The four complaints concerned the factual circumstances surrounding Midyett's termination from VHS, including allegations that his employer discriminated against him, retaliated against him, and generally treated him unfairly.

The first lawsuit was filed on July 9, 2012, in the Circuit Court of Washington County, Arkansas, against Lisa Dahlgren, Medical Staff Coordinator for VHS. The case was removed to federal court with the United States substituted as the defendant. (Case No. 5:12-CV-5188). Next, on July 10, 2012, Midyett filed a second lawsuit in the Circuit Court of Washington County, this time against Dr. John Cuchia, a physician affiliated with VHS. Once again, the case was removed to federal court, and the United States was substituted for Dr. Cuchia. (Case No. 5:12-CV-5187). On July 11, 2012, Midyett filed a third complaint in Washington County Circuit Court, this time against Dr. John Henley, the former Chief of Staff of VHS. The United States answered the third complaint on Dr. Henley's behalf and removed the case to this Court. (Case No. 5:12-CV-5183). Finally, on July 12, 2012, Midyett filed a fourth complaint in state court naming as the defendant Dr. Robert Levy, the former Chairman of the Professional Standards Board for VHS. Just as before, the United States entered an appearance in the case and removed it to this Court. (Case No. 5:12-CV-5184).

All four cases ("the 2012 cases") were dismissed in separate orders issued on October 29, 2012. In the dismissal orders, the Court found that it lacked federal jurisdiction over some of the state law claims and that other substantive employment-based claims should be dismissed for failure to state plausible causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The complaints were all extremely detailed, lengthy, and difficult to follow. They recited essentially the same facts, though the legal causes of action arising from those facts varied slightly from case to case.

A little over a year after the 2012 cases were dismissed, Midyett filed another lawsuit on January 14, 2014. This time he filed directly in this Court, suing Dr. Levy for a second time. (Case No. 5:14-CV-5016 ("the 2014 case")). By the beginning of 2014, Midyett's EEO complaints were still pending before the OFO, and he had not yet received a right-to-sue letter. Nevertheless, he pushed ahead and filed the 2014 case, asserting many of the same employment-based causes of action that he filed in 2012,[1] but recharacterizing them as Title VII, ADEA, Whistleblower Protection Act, No FEAR Act, and due process claims.

The Government filed a motion to dismiss the 2014 case on May 21, 2014. The Court referred the motion to the Honorable Erin L. Setser,[2] United States Magistrate Judge for the Western District of Arkansas, who recommended that the case be dismissed pursuant to the doctrine of res judicata. See Doc. 66, Case No. 5:14-CV-5016. Midyett filed objections to the Magistrate Judge's Report and Recommendation ("R&R"),

---

[1] Plaintiff never appealed the 2012 dismissals.

[2] Now the Honorable Erin L. Wiedemann.

3

and the Court reviewed the matter *de novo*. After careful consideration, the Court adopted the R&R and dismissed the 2014 case in a written order published on July 13, 2015. (Doc. 73, Case No. 5:14-CV-5016). The Court found that the case Midyett filed against Dr. Levy in 2012 involved the same parties as the case filed in 2014. Further, the 2012 case against Dr. Levy resulted in a final judgment on the merits, was based on proper jurisdiction, and arose from the same nucleus of operative facts asserted in the 2014 case. *Id.* at 2. That "nucleus of operative facts" was defined to include the facts surrounding Midyett's "alleged[] terminat[ion] from the VA hospital where he was employed in violation of his rights, and the administrative hearing related to his termination . . . ." *Id.* The Court specifically held that Midyett's 2012 case against Dr. Levy asserted claims for failure to accommodate a disability, harassment, hostile work environment, age and sex discrimination, and retaliation; and the 2014 case asserted many of the same substantive claims, though expressed through different legal theories. *Id.*

At around the time the 2014 case was being dismissed in this Court, the OFO's investigation of Midyett's EEO complaints began picking up steam. On July 14–15 and 20–21, the administrative law judge ("ALJ") held several hearings, and Midyett and his counsel were afforded the opportunity to appear in person and submit evidence. *See* Doc. 1-1, pp. 35–54, Case No. 5:19-CV-5152. The ALJ issued a final decision on January 25, 2017, denying all claims. *Id.* at 151–52. The agency then affirmed the decision and issued a final order of dismissal on February 2, 2017. *See id.* at 147. Midyett filed an administrative appeal on March 1, 2017. *Id.* Two years later, the appeals process finally concluded, and the OFO affirmed the ALJ's order in an opinion dated April 25, 2019. *Id.*

4

at 147–60. The order on appeal found that Midyett "had not shown that the Agency discriminated against, or subjected him to a hostile work environment, based on his age, disability, national origin, race, sex, or in reprisal for his EEO activity." *Id.* at 158–59. He subsequently filed a request for reconsideration, which was denied on July 26, 2019. *See id.* at 142–44. At long last, the OFO's administrative review of the EEO complaints was at an end, and Midyett, with his right-to-sue letter in hand, filed the instant Complaint in this Court on August 13, 2019.

Unlike the previous complaints reviewed by this Court, the instant one is brought against the Secretary of the Department of Veterans Affairs himself, and not against any employees of VHS; however, like Midyett's previous complaints, this one claims that he was discriminated and retaliated against while employed as a VHS radiologist from late 2010 to early 2012. Specifically, he brings claims for gender, race, and national origin discrimination and retaliation under Title VII, disability discrimination under the Americans with Disabilities Act ("ADA"), and age discrimination under the ADEA. (Doc. 1, p. 2).

Defendant filed a motion to dismiss the case on the basis of res judicata on October 15, 2019, and Midyett filed a response. His response is largely unhelpful in that it rehashes the merits of his claims for several pages and only addresses res judicata in the final paragraphs of the brief. Midyett argues that res judicata does not apply because his previous lawsuits did not include claims styled as Title VII claims. He also observes that if the Court construed Title VII claims from his prior lawsuits, the Court "could [not] possibly have had jurisdiction" to hear such claims, since they were pending before the OFO at the time. The Court will consider the parties' arguments on res judicata in the discussion below.

5

## II. LEGAL STANDARD

Rule 12(b)(6) requires a court reviewing a motion to dismiss "to accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To survive such a motion, the complaint "'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the complaint need not provide specific facts in support, it "must include sufficient factual information to provide 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Id.* (internal citation omitted). A complaint that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

As a general rule, a motion to dismiss "should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). When a defendant asserts res judicata as grounds for dismissal, the defendant bears the burden of proving that the doctrine applies. *Bryson v. Guar. Reserve Life Ins. Co.*, 520 F.2d 563, 566 (8th Cir. 1975). To carry that burden, the defendant must clearly show controlling factual identities between the first and second cases. *Id.* The party cannot meet its burden by "rest[ing] upon mere assertions or speculation." *Id.*

## III. DISCUSSION

### A. First, Third, and Fourth Res Judicata Factors

Midyett urges the Court *not* to dismiss the case based on res judicata. Yet he must concede that this Court dismissed his 2014 case with prejudice after finding that his employment-based claims—which are factually the same as those in the instant Complaint—were barred due to res judicata. *See* Case No. 5:14-CV-5016, Doc. 74. As Midyett failed to appeal the dismissal of the 2014 case, he cannot dispute the Court's findings in that case. Specifically, the Court determined that Midyett had maintained claims for due process violations, age discrimination, sex discrimination, race and national origin discrimination, retaliation, and whistleblowing—all of which had been previously raised in Case No. 5:12-CV-5184 ("Case 5184"). The 2014 case and Case 5184 involved the same defendant, Dr. Levy, who was an employee of VHS. Finally, Midyett cannot reasonably dispute that he was afforded the opportunity to object to a finding that the Court's dismissal of Case 5184 "resulted in a final judgment on the merits"—but he failed to do so. *See* Case No. 5:14-CV-5016, Doc. 73, p. 2.

"To establish that a claim is barred by res judicata a party must show: '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008) (quoting *Costner v. URS Consultants*, Inc., 153 F.3d 667, 673 (8th Cir. 1998)). The Court will begin its discussion by analyzing the first, third, and fourth res judicata factors. Then the Court will

7

separately address the second factor, as it appears to be the only one that Midyett disputes.

Beginning with the first factor, the Court finds that the 2014 case and Case 5184 resulted in final judgments, entered in response to motions to dismiss filed by the United States. For purposes of res judicata, a judgment that is entered on a motion to dismiss may constitute a final judgment on the merits. *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 862 (8th Cir. 1983). "[A] Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." *United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988).

Moving on to the third res judicata factor, the Court finds that the 2014 case and Case 5184 involved the same parties as the instant case or those in privity with them. The previous lawsuits were filed by Midyett against Dr. Levy, who was then employed by VHS. The United States entered an appearance on Dr. Levy's behalf in each case. The Defendant in the current case is the Secretary of the Department of Veterans Affairs, who stands in privity with VHS and its employees.

Finally, as to the fourth res judicata factor, the Court finds that the instant case arises from the same nucleus of facts concerning Midyett's allegations of employment discrimination, retaliation, and wrongful termination raised in the 2014 case and Case 5184. The particular theory of recovery that Midyett uses to drive the facts is irrelevant to the res judicata analysis. *See King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992) ("[R]es judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding."); *Lane v. Peterson*, 899 F.2d 737, 744 (8th Cir. 1990) ("[W]here a plaintiff fashions a new theory

8

of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim.").

### B. Second Res Judicata Factor

The second factor in the res judicata analysis asks whether the earlier, dismissed cases were decided based on proper court jurisdiction. Midyett did not challenge the Court's jurisdiction in the earlier lawsuits. *See* Doc. 64, p. 8; Doc. 73, p. 2, Case No. 5:14-cv-05016. Now, however, he argues that the Court lacked jurisdiction in 2012 and 2014 to hear his gender, race, national origin, disability, and age discrimination claims, since the OFO had not yet issued him a right-to-sue letter on those claims. The Court rejects Plaintiff's argument based on well-settled law.

Although the Eighth Circuit has not specifically weighed in on whether a plaintiff's possession of a right-to-sue letter serves as a condition precedent to bringing federal employment claims in court, nearly every other federal appellate court has decided the issue. For example, in *Jang v. United Technologies Corp.*, the Eleventh Circuit found that "res judicata barred Appellant from splitting his causes of action and bringing his ADA claim after his first suit proceeded to a judgment on the merits." 206 F.3d 1147, 1149 (11th Cir. 2000). *Jang* involved earlier-filed—and dismissed—state-law claims for breach of contract and civil rights violations arising from his employment as an aerospace engineer. Since the district court dismissed Jang's earlier claims "on the merits," his subsequent attempt to bring a federal ADA case in court after receiving a right-to-sue letter was barred by res judicata. *Id.* The Court of Appeals was persuaded that the ADA

claim could have been brought in the first case and, if the plaintiff had so moved, the claim could have been stayed pending the conclusion of the EEOC's administrative review. *Id.*

In a similar case, the Second Circuit in *Woods v. Dunlop Tire Corp.* considered whether a district court properly dismissed a plaintiff's later-filed lawsuit based on res judicata. 972 F.2d 36, 41 (2d Cir. 1992). The plaintiff had elected to pursue her state-law employment discrimination claims in federal court while her EEOC claims were still pending. The Court affirmed the district court's dismissal of the plaintiff's second suit—filed *after* the first suit was dismissed and *after* she received her right-to-sue letter—explaining that in order to "avoid the sting of res judicata," the plaintiff should have sought a stay of her Title VII claims in federal court or asked the EEOC to issue her an early right-to-sue letter before the administrative process concluded. *See Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 360–61 (1977) ("If a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court. The 180-day limitation provides only that this private right of action does not arise until 180 days after a charge has been filed.").

The *Jang* and *Woods* cases make clear that a plaintiff's decision to file a federal employment lawsuit *before* an EEO complaint has been resolved administratively could lead to significant consequences due to the application of the doctrine of res judicata. For example, the federal court could issue a final judgment on some of the claims, and that judgment could later be used to bar the plaintiff from seeking further relief after she receives a right-to-sue letter. The *Woods* Court explained that when claims brought in a second lawsuit could have equally been brought in an earlier lawsuit, res judicata will

10

apply. In *Woods*, the plaintiff's second lawsuit for wrongful discharge was based on race and gender discrimination under Title VII, while her first lawsuit involved a claim for wrongful termination in violation of the terms of a collective bargaining agreement. 972 F.2d at 37. Though Ms. Woods argued on appeal that the legal claims in the two lawsuits were so distinct that res judicata should not apply, the Court of Appeals disagreed, focusing on the fact that both lawsuits "centered around [the] firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications." *Id.* at 39.

The Seventh Circuit also considered this issue in *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 225 (7th Cir.1993). There, the court held that "[p]arties to Title VII actions enjoy no immunity from res judicata." To illustrate the policy reasons behind such a rule, the Court offered the following hypothetical:

> Suppose a worker is fired, in violation (he claims) of his employment contract, two state statutes, and seven federal statutes, only one of which—Title VII—provides for any administrative remedy. That would be a clear case in which one transaction was alleged to violate a host of different laws, and it would not make much sense to say that the plaintiff must file all but the Title VII claim in one suit but may wait and bring a second suit charging violations of Title VII alone. For then a significant fraction of legally questionable discharges would give rise to two suits. This inefficient manner of litigation—inefficient and, we add, unduly burdensome to employers and hence indirectly to other workers and to consumers as well as to stockholders—can be avoided without crippling Title VII's administrative remedies.

*Id.* The Court also pointed out—just as the Second Circuit did in *Woods*—that an aggrieved plaintiff who elects to bring *some* claims involving the same nucleus of facts in state or federal court prior to the conclusion of the EEOC's administrative review may take active steps to insulate himself from later dismissal due to res judicata by simply

11

"ask[ing] the EEOC . . . to accelerate the administrative process" or by "ask[ing] the court . . . to stay the proceedings until the Title VII administrative process is complete." *Id.*

The reasoning of the Eleventh, Second, and Seventh Circuits on the applicability of res judicata principles in federal employment law cases applies in the instant case. Here, Midyett's failure to take protective measures to preserve his EEO claims while his factually similar employment-based claims were pending in court exposed him to the risk that any later-filed claims could be dismissed due to res judicata. The Fifth, Tenth, Third, and Sixth Circuits are in agreement with the other Circuits on this point. *See, e.g., Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 365 (5th Cir. 2014) ("The lack of a right-to-sue letter . . . does not affect the rules of res judicata."); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) ("[A] plaintiff who brings a Title VII action and files administrative claims with the EEOC must still comply with general rules governing federal litigation respecting other potentially viable claims." (internal quotation omitted)); *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 505 (10th Cir. 2002) (dismissing a plaintiff's later-filed lawsuit on res judicata grounds and rejecting the plaintiff's argument that "she was statutorily prohibited from bringing her Title VII claim until she received her right-to-sue letter from the EEOC"); *Churchill v. Star Enters.*, 183 F.3d 184, 193 (3d Cir. 1999) (agreeing with other appellate courts that a plaintiff who waits for a right-to-sue letter and does not seek a stay of a pending federal employment discrimination case "may have to forego administrative remedies and obtain an early right to sue letter" to avoid dismissal of the second suit due to claim preclusion); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (claims barred by res

12

judicata because plaintiff could have obtained a right-to-sue letter and perfected her claim during the two-year pendency of the prior lawsuit).

In the case at bar, the OFO considered Midyett's EEO petitions for seven years before issuing him a right-to-sue letter. In the meantime, he chose to have a court adjudicate the facts surrounding his termination—not once, but five separate times. The specific theories of recovery that he advanced in these earlier lawsuits are of no particular consequence now. What matters instead is whether the claims asserted here are based on the same nucleus of operative facts as the prior cases. Midyett did not seek a stay of his EEO claims in this Court in the earlier lawsuits, nor did he seek the issuance of an accelerated right-to-sue letter. Rather than take these protective measures, he hedged his bets and attempted to litigate the subject of his termination in piecemeal fashion: first through the OFO's administrative process, and second, through five cases litigated between July of 2012 and July of 2015. As much as he might desire a sixth bite at the proverbial apple, he will not get it. The Court finds that it had proper jurisdiction over his previous claims, and the relitigation of those claims is barred by res judicata.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 10) is **GRANTED** for the reasons set forth above. The case is **DISMISSED WITH PREJUDICE**.

Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this __16th__ day of December, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

13